David D. Barnhorn, Esq.
Romero Law Group PLLC
490 Wheeler Road, Suite 277
Hauppauge, New York 11788
Tel.: (631) 257-5588
Email: dbarnhorn@romerolawny.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------------------X

ROBIN HAPPONEN,

Plaintiff,

-against-

**COMPLAINT**

PREVENT CHILD ABUSE – NEW JERSEY CHAPTER, INC. d/b/a PREVENT CHILD ABUSE-NEW JERSEY, KIM HAIGH and KELLY MCGLASSON,

Jury Trial Demanded

Defendants.

---------------------------------------------------------------------X

Plaintiff, Robin Happonen ("Plaintiff" or "Happonen"), by and through her counsel, the Romero Law Group PLLC, complaining of the Defendants, Prevent Child Abuse – New Jersey Chapter, Inc. d/b/a Prevent Child Abuse-New Jersey ("PCA"), Kim Haigh ("Haigh") and Kelly McGlasson ("McGlasson") (collectively as "Defendants"), alleges as follows:

**NATURE OF THE CLAIM**

1. Plaintiff brings this action to recover damages for unlawful discrimination based on her disabilities and/or perceived disabilities, failure to accommodate her disabilities, and retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended by the ADA Amendments Act (collectively as the "ADA") and the New Jersey Law Against Discrimination ("NJ LAD"), N.J.S.A. 10:5-12 *et seq.*, for retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and

against Defendants Haigh and McGlasson for aiding and abetting Defendant PCA's violations of the NJ LAD, and any other claim(s) that can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this United States District Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred within the District of New Jersey.

4. Plaintiff timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on her disabilities and/or perceived disabilities, failure to accommodate her disabilities, and retaliation for engaging in protected activity, in violation of the ADA under Charge Number: 524-2026-00174. Plaintiff commenced this action within ninety days of the EEOC issuing its Notice of Right to Sue.

## THE PARTIES

5. Plaintiff is a resident of the State of New Jersey.

6. At all times relevant, Plaintiff was an employee, a person, and a qualified individual with a disability, within the meaning of the ADA and NJ LAD, and suffered from a serious health condition within the meaning of the FMLA.

7. At all times relevant, Defendant PCA is a domestic non-profit corporation incorporated under the laws of New Jersey, had and has its principal place of business located at 825 Georges Road, 3rd Floor, Suite 2, North Brunswick, New Jersey 08902.

8. At all times relevant, Defendant PCA employed more than fifty employees.

9. At all times relevant, Defendant PCA was and is an "employer" within the meaning of the ADA, NJ LAD and FMLA.

10. At all times relevant, Defendant Haigh was and is employed by Defendant PCA as its Director of Grow NJ Kids.

11. At all times relevant, Defendant Haigh was and is a person within the meaning of the NJ LAD.

12. At all times relevant, Defendant McGlasson was and is employed by Defendant PCA as its Program Manager, Northeast Region.

13. At all times relevant, Defendant McGlasson was and is a person within the meaning of the NJ LAD.

## FACTS

14. Defendant PCA is a corporation that operates as Prevent Child Abuse-New Jersey.

15. Plaintiff commenced her employment with Defendant PCA on or about March 7, 2017.

16. Defendant PCA employed Plaintiff as an Early Childcare Consultant from on or about March 7, 2017 until in or about October 2020 and as a Senior Technical Assistance Specialist from in or about October 2020 until on or about January 15, 2025.

17. In her position as a Senior Technical Assistance Specialist, Plaintiff was responsible for supervising a team of four Early Childcare Consultants.

18. Plaintiff was also responsible for monitoring five facilities and completing the necessary procedures to obtain Grow NJ Kids ratings for those schools. The process typically requires periodic onsite visits to the various facilities monitored by members of Defendant PCA's team.

19. Throughout the Covid-19 pandemic and thereafter, Plaintiff and others in her same position all performed their duties remotely.

20. Throughout her employment, Plaintiff performed her duties in an exemplary manner and was qualified for her job.

21. Moreover, Plaintiff did not suffer any criticism for her job performance prior to engaging in protected activity under the ADA, NJ LAD and FMLA, as discussed below.

22. Throughout her employment, Plaintiff was and remains able to perform the duties of her position with and even without an accommodation.

23. On or about April 18, 2024, Plaintiff suffered a transient ischemic attack ("TIA").

24. A TIA is caused by a temporary disruption of blood flow to the brain, leading to stroke-like symptoms.

25. Plaintiff has long suffered from stage 4, severe fibromyalgia.

26. Stage 4, fibromyalgia is a long-term condition that involves widespread muscle and joint pain and fatigue, and often causes issues with sleep, mood disorders, headaches, anxiety and depression.

27. Beginning on or about April 18, 2024, Plaintiff suffered a new flare up of her severe fibromyalgia symptoms following her TIA incident.

28. Both of these medical conditions constitute disabilities under the ADA and NJ LAD, and serious health conditions within the meaning of the FMLA.

29. Following this TIA incident, Plaintiff took a period of medical leave as a reasonable accommodation until on or about July 22, 2024.

30. Each instance of exercising Plaintiff's rights to request a reasonable accommodation or availing herself of an accommodation constitutes protected activity under the ADA and NJ LAD.

31. Due to her medical conditions, and following her TIA incident, Plaintiff suffered from certain limitations, which required a temporary reasonable accommodation of her disabilities. These limitations included an inability for Plaintiff to drive for long periods of time and an inability to engage in long periods of standing and physical activity.

32. Upon information and belief, Defendant PCA afforded Plaintiff with a 12-week period of FMLA leave commencing on April 18, 2024.

33. Availing oneself of a period of protected leave or otherwise availing oneself of the rights afforded under the statute constitutes protected activity under the FMLA.

34. On or about July 22, 2024, Plaintiff requested an accommodation in the form of working remotely and to permit Early Childcare Consultants on her team to perform onsite inspections of her facilities on her behalf until Plaintiff fully recovered from her TIA incident.

35. On or about July 22, 2024, Plaintiff also returned to work and provided Defendants with a medical note permitting Plaintiff to return to work.

36. Upon her return to work on or about July 22, 2024, Defendants provided Plaintiff with her requested accommodation.

37. Upon her return, Defendants instructed Plaintiff that her request for accommodation would be reevaluated during January 2025.

38. Throughout the period of July 2024 until January 2025, Plaintiff successfully performed the duties of her position with her accommodation, and without disruption to Defendants' business.

39. To even the workload with her staff, Plaintiff took on additional paperwork and administrative work ordinarily performed by the Early Childcare Consultants on her team, which permitted them time to perform any needed onsite visits without disruption.

40. On or about September 26, 2024, Plaintiff provided an updated medical note to continue her reasonable accommodation to work remotely and avoid extended periods of driving. This constitutes yet another request for accommodation in the form of a request to continue the accommodation that was successfully in place at that time.

41. Plaintiff's physician's medical note, submitted on or about September 26, 2024, explained her limitations, including Plaintiff's need to work remotely and avoid long periods of driving and physical activity due to her disabilities and her medications that are needed to treat those disabilities.

42. Through this medical note, Plaintiff's physician requested that these accommodations continue until in or about January 2025.

43. Throughout in or about November and December 2024, Plaintiff engaged in repeated conversations with Defendant McGlasson, Program Manager, Northeast Region, and Defendant PCA's human resources director about modifying Plaintiff's accommodation to permit her to return to her normal duties.

44. In particular, in or about December 2024, Plaintiff had multiple meetings with Defendant McGlasson and separately with Defendant PCA's human resources director about specific suggestions for modifying Plaintiff's accommodation in or about January 2025.

45. During these conversations, Plaintiff explained that although her need for more limited periods of driving may continue, Plaintiff could readily perform all of her duties with a limited accommodation.

46. Specifically, during these conversations, Plaintiff proposed that she be permitted to monitor the same five facilities that she was assigned before her TIA incident.

47. This included three facilities that already received their ratings due to Plaintiff's prior efforts and two facilities that were not yet rated.

48. Rated schools require onsite visits only once per quarter whereas unrated facilities require onsite visits once per month.

49. Plaintiff explained that she could manage the amount of driving for these five facilities because three of the facilities required less frequent onsite visits.

50. Although these proposals were discussed as a request for a modified accommodation, in light of her employment circumstances at that time, this was actually a proposal to return to performing all of Plaintiff's ordinary duties without any actual accommodation.

51. Indeed, had Plaintiff never suffered her TIA incident or never received any accommodations, Plaintiff would have continued to manage these same five facilities and performed these exact same duties in the manner that she was now requesting.

52. As such, the proposed request for a modified accommodation was in fact a request to return to Plaintiff's same job duties as she was assigned prior to her TIA incident and her requests for accommodation.

53. In or about December 2024, Plaintiff engaged in a brief conversation with Defendant Haigh, Director of Grow NJ Kids, about these same suggestions for a modified accommodation.

54. Due to Defendant Haigh's limited availability, Plaintiff was forced to rely on Defendant McGlasson and Defendant PCA's human resources director to provide greater detail

regarding her proposal for a modified accommodation to Defendant Haigh, and to elaborate further on the accommodation request discussed with Defendant Haigh in or about December 2024.

55. Throughout these conversations in or about November and December 2024, Defendant PCA, through Defendant McGlasson and its human resources director, repeatedly assured Plaintiff that her request for a modified accommodation would be considered during January 2025.

56. Because Plaintiff would be completing all of her ordinary duties in the same manner as before her medical leave and need for accommodation, Defendant PCA could not possibly suffer any form of undue hardship by permitting this proposed modified accommodation.

57. On or about January 7, 2025, Plaintiff attended a meeting with Defendant Haigh, Defendant McGlasson and Defendant PCA's human resources director.

58. Based on their past conversations, Plaintiff understood that this meeting on or about January 7, 2025 was scheduled to discuss her request for a modified accommodation.

59. To her horror, on or about January 7, 2025, Defendant PCA, Defendant Haigh and Defendant McGlasson instead summoned Plaintiff to this meeting to abruptly and callously terminate her employment.

60. During this meeting, on or about January 7, 2025, Defendants informed Plaintiff that Defendant PCA could no longer provide her with her accommodation that she had received since in or about July 2024 and informed her that employment will be terminated, in violation of the ADA, NJ LAD and FMLA.

61. However, Defendants did not consider any other alternative accommodations, including Plaintiff's proposal for a modified accommodation.

62. During that meeting, Defendants offered to permit Plaintiff to continue her employment through February 28, 2025.

63. On or about January 10, 2025, Plaintiff spoke with Defendant McGlasson regarding the recent meeting regarding her impending termination of employment.

64. Plaintiff strongly suspected that Defendant McGlasson had not discussed her proposed modified accommodation with Defendant Haigh.

65. Because of this, during this discussion on or about January 10, 2025, Plaintiff inquired whether Defendant McGlasson had communicated Plaintiff's proposal for a modified accommodation to Defendant Haigh.

66. During this discussion on or about January 10, 2025, Plaintiff further complained that Defendants, including Defendant McGlasson, failed to consider her proposal for a modified accommodation and instead terminated her rather than provide her with a reasonable accommodation.

67. These complaints made during these discussions constitute further protected activity under the ADA and NJ LAD.

68. Soon thereafter, Defendant McGlasson, who was angered by Plaintiff's well-founded complaints, falsely reported to Defendant PCA and Defendant Haigh that Plaintiff had engaged in unprofessional communications with her.

69. However, it is obvious that Defendant McGlasson cannot avoid the dictates of the ADA and NJ LAD by mischaracterizing a good faith complaint regarding discrimination and a failure to accommodate Plaintiff's disabilities that constitute protected activity under the ADA and NJ LAD.

70. On or about January 15, 2025, Defendant PCA, through Veronica Ford, Vice President, Defendant Haigh and Defendant McGlasson summarily terminated Plaintiff's employment and refused to permit Plaintiff to continue her employment through February 28, 2025, in violation of the ADA, NJ LAD and FMLA.

71. During this meeting on or about January 15, 2025, Defendant PCA, through Ms. Ford, claimed this termination was based on Plaintiff's purportedly inappropriate communications with Defendant McGlasson on or about January 10, 2025.

72. During this meeting on or about January 15, 2025, Plaintiff requested that Defendant McGlasson explain what aspect of their discussion was inappropriate, but Defendant McGlasson tellingly provided no explanation.

73. In reality, it is clear that Defendant PCA, Defendant Haigh and Defendant McGlasson terminated Plaintiff's employment because of her disabilities, past requests for accommodation, affording herself of certain accommodations and leave, and for engaging in protected activity by opposing their failure to consider her proposed accommodation or afford any other accommodation, in violation of the ADA, NJ LAD and FMLA.

74. Worse still, during the meeting on or about January 15, 2025, Plaintiff again informed Defendants of her proposal for a modified accommodation to permit her to return to managing the same five facilities that she previously managed, which would permit her to perform all of her duties.

75. During the meeting on or about January 15, 2025, Plaintiff then asked Defendant Haigh if she was ever informed of this proposed modified accommodation.

76. In response, during the meeting on or about January 15, 2025, Defendant Haigh openly admitted that she was never informed of this proposed accommodation by anyone,

including Defendant McGlasson, other than her previous brief conversation with Plaintiff during in or about December 2024.

77. Appallingly, on or about January 15, 2025, Defendant PCA, Defendant Haigh and Defendant McGlasson still terminated Plaintiff's employment, despite their knowledge that an available accommodation – i.e. simply returning Plaintiff to her normal duties managing her original five facilities – readily existed.

78. On or about January 22, 2025, Defendant PCA sent Plaintiff a termination letter claiming that her employment was terminated as of January 15, 2025 and that Defendant PCA "would no longer be able to provide accommodations, based on the physical requirements of your position and role in the agency."

79. This letter is demonstrably false as Defendant PCA, Defendant Haigh and Defendant McGlasson were well aware that Defendants could provide a reasonable accommodation based on Plaintiff's numerous meetings with them during in or about November 2024 through in or about January 2025.

80. Based on the foregoing, Defendant PCA discriminated against Plaintiff based on her disabilities and/or perceived disabilities, and failed to reasonably accommodate her disabilities, in violation of the ADA and NJ LAD.

81. Based on the foregoing, Defendant PCA retaliated against Plaintiff based on her engaging in protected activity, including opposing discriminatory conduct, making multiple requests for reasonable accommodations and/or exercising her right to request reasonable accommodations of her disabilities, and exercising her right to medical leaves and accommodations, in violation of the ADA and NJ LAD.

82. Based on the foregoing, Defendants Haigh and McGlasson unlawfully aided and abetted Defendant PCA's discrimination against Plaintiff based on her disabilities and/or perceived disabilities and failure to accommodate her disabilities, and Defendant PCA's retaliation for engaging in protected activity in violation of the NJ LAD.

83. Based on the foregoing, Defendant PCA retaliated against Plaintiff for engaging in protected activity, including engaging in a period of leave under the FMLA, in violation of the FMLA.

84. Due to Defendants' unlawful conduct, Plaintiff has suffered the loss of her job and the opportunity to work, the loss of her past wages and future wages, the loss of benefits that she would be receiving but for Defendants' unlawful conduct, and out of pocket expenses.

85. Due to Defendants' unlawful conduct, Plaintiff has suffered substantial emotional harm, distress and suffering, mental anguish, embarrassment and humiliation at a time in which she felt especially vulnerable due to her medical condition and treatment.

86. Defendants' unlawful conduct was also willful, wanton, and/or reckless conduct and/or done in conscious disregard of Plaintiff's rights under the ADA and NJ LAD, thereby justifying an award of punitive damages.

**FIRST CLAIM FOR RELIEF**
**(DISCRIMINATION – ADA)**
**(AGAINST DEFENDANT PCA)**

87. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

88. Defendant PCA was aware of Plaintiff's disabilities and/or perceived disabilities.

89. Based on the foregoing, Defendant PCA discriminated against Plaintiff in the terms and conditions of her employment because of Plaintiff's disabilities and/or perceived disabilities,

in violation of the ADA.

90. As a proximate result of the discrimination described herein, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings and other employment benefits.

91. As a proximate result of the discrimination described herein, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages, in an amount to be determined at trial.

92. As a proximate result of the discrimination described herein, Plaintiff is entitled to an award of attorneys' fees, costs of this action and interest as permitted by law.

93. Defendant PCA discriminated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages under the ADA.

**SECOND CLAIM FOR RELIEF**
**(FAILURE TO ACCOMMODATE DISABILITIES – ADA)**
**(AGAINST DEFENDANT PCA)**

94. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

95. Defendant PCA was aware of Plaintiff's disabilities and need for reasonable accommodation.

96. Defendant PCA failed to make reasonable accommodation for Plaintiff's disabilities.

97. Based on the foregoing, Defendant PCA discriminated against Plaintiff in the terms and conditions of her employment because of Plaintiff's disabilities, in violation of the ADA.

98. As a proximate result of the discrimination described herein, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings and other employment benefits.

99. As a proximate result of the discrimination described herein, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages, in an amount to be determined at trial.

100. As a proximate result of the discrimination described herein, Plaintiff is entitled to an award of attorneys' fees, costs of this action and interest as permitted by law.

101. Defendant PCA discriminated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages under the ADA.

**THIRD CLAIM FOR RELIEF**
**(RETALIATION – ADA)**
**(AGAINST DEFENDANT PCA)**

102. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

103. Defendant PCA was aware that Plaintiff engaged in protected activity under the ADA.

104. Based on the foregoing, Defendant PCA retaliated against Plaintiff because of her protected activity, in violation of the ADA.

105. As a proximate result of the retaliation described herein, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings and other employment benefits.

106. As a proximate result of the retaliation described herein, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages, in an amount to be determined at trial.

107. As a proximate result of the retaliation described herein, Plaintiff is entitled to an award of attorneys' fees, costs of this action and interest as permitted by law.

108. Defendant PCA retaliated against Plaintiff by engaging in willful, wanton, and/or

reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages under the ADA.

**FOURTH CLAIM FOR RELIEF**
**(DISCRIMINATION – NJ LAD)**
**(AGAINST DEFENDANT PCA)**

109. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

110. Based on the foregoing, Defendant PCA discriminated against Plaintiff because of her disabilities and/or perceived disabilities and failure to accommodate her disabilities, in violation of the NJ LAD.

111. As a proximate result of the discrimination described herein, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits and out of pocket expenses.

112. As a proximate result of the discrimination described herein, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages, in an amount to be determined at trial.

113. As a proximate result of the discrimination described herein, Plaintiff is entitled to an award of attorneys' fees, costs of this action and interest as permitted by law.

114. Defendant PCA discriminated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages under the NJ LAD.

**FIFTH CLAIM FOR RELIEF**
**(RETALIATION – NJ LAD)**
**(AGAINST DEFENDANT PCA)**

115. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above

with the same force and effect as if fully set forth herein.

116. Defendant PCA was aware that Plaintiff engaged in protected activity under the NJ LAD.

117. Based on the foregoing, Plaintiff for engaged in protected activity under the NJ LAD.

118. Based on the foregoing, Defendant PCA retaliated against Plaintiff for engaging in protected activity in violation of the NJ LAD.

119. As a proximate result of the retaliation described herein, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits and out of pocket expenses.

120. As a proximate result of the retaliation described herein, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages, in an amount to be determined at trial.

121. As a proximate result of the retaliation described herein, Plaintiff is entitled to an award of attorneys' fees, costs of this action and interest as permitted by law.

122. Defendant PCA retaliation against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages under the NJ LAD.

**SIXTH CLAIM FOR RELIEF**
**(AIDING AND ABETING UNLAWFUL CONDUCT – NJ LAD)**
**(AGAINST DEFENDANTS HAIGH AND MCGLASSON)**

123. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

124. Under the NJ LAD, it is unlawful "[f]or any person, whether an employer or an

employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

125. Based on the foregoing, Defendants Haigh and McGlasson aided and abetted Defendant PCA's discrimination against Plaintiff because of her disabilities and/or perceived disabilities and failure to accommodate her disabilities, and Defendant PCA's retaliation for engaging in protected activity in violation of the NJ LAD.

126. As a proximate result of the unlawful conduct described herein, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, and out of pocket expenses.

127. As a proximate result of the unlawful conduct described herein, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages, in an amount to be determined at trial.

128. As a proximate result of the unlawful conduct described herein, Plaintiff is entitled to an award of attorneys' fees, costs of this action and interest as permitted by law.

129. Defendants Haigh and McGlasson discriminated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages under the NJ LAD.

**SEVENTH CLAIM FOR RELIEF**
**(RETALIATION -- FMLA)**
**(AGAINST DEFENDANT PCA)**

130. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

131. Defendant PCA was aware that Plaintiff engaged in protected activity under the FMLA.

132. Based on the foregoing, Defendant PCA retaliated against Plaintiff in the terms and conditions of her employment because Plaintiff engaged in protected activity, in violation of the FMLA.

133. Defendant PCA's violation of the FMLA was willful and intentional.

134. As a proximate result of the retaliation described herein, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings and other employment benefits.

135. As a proximate result of the retaliation described herein, Plaintiff is entitled to an award of liquidated damages, attorneys' fees, costs of this action and interest as permitted by law.

## DEMAND FOR JURY TRIAL

136. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Issuing an order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

ii. Issuing a declaratory judgment that the practices complained of in this Complaint are unlawful under the ADA, FMLA, and NJ LAD;

iii. Awarding damages for, *inter alia*, compensatory damages for back pay, front pay (in lieu of reinstatement), all benefits to which Plaintiff would have been entitled to receive but for Defendants' unlawful conduct, damages for emotional distress, pain and suffering, and other incidental and consequential damages;

iv. Awarding reinstatement of Plaintiff to an equivalent position;

v. Awarding liquidated damages pursuant to the FMLA,

vi. Awarding punitive damages as permitted by law;

vii. Awarding pre- and post-judgment interest as permitted by law;

viii. Awarding all attorneys' fees incurred in prosecuting these claims;

ix. Awarding all costs incurred in prosecuting these claims; and

x. Granting such other and further relief as this Court deems just and proper.

Dated: Hauppauge, New York
July 22, 2026

ROMERO LAW GROUP PLLC
*Attorneys for Plaintiff*
490 Wheeler Road, Suite 277
Hauppauge, New York 11788
Tel.: (631) 257-5588
Email: dbarnhorn@romerolawny.com

By: David Barnhorn
________________________________
DAVID D. BARNHORN, ESQ.